Johnson, C. J. This was an application made by James Lawson Jr. as late sheriff of Pulaski county for the distribution of certain moneys collected upon sundry executions. The petitioner charges that whilst acting as late sheriff of Pulaski county, under and by virtue of sundry writs of execution in his hands, which-issued from the office of the clerk of said court against Thomas-Thorn, he advertised all the land and town lots of said Thom known to him in the county for sale, and that on the first day of the then term of the court, he offered said lands and town lots and one negro slave Ben for sale, and did sell the same, the whole' of which amounted, to eight thousand one hundred and ninety dollars: That there was then in his hands a large number of executions against said Thorn, and that the amount of the sales so made would not satisfy the whole of said executions; that he had-spread the whole of said property, except the slave, on each and every execution, save those on which the lien in his opinion had expired, and made upon each a full and explicit statement of the sale of each tract of land, of each lot or each parcel of lots, the amount for which each parcel sold and names of the purchasers. He then suggests that it remains that the amount of such sales shall he distributed and paid over to the judgment creditors of Thorn according to law. He further avers that he has endeavored to come to some conclusion as to what disposition he ought to make of said sales so that strict justice' shoüld be awarded to each judgment creditor, but owing to the great diversity of. Opinion and interest existing among the creditors and the different views as to the law governing the case by their attorneys and suggestions made, he feels himself at a loss how he should proceed in the premises. He then submits his own opinion as to the manner in which the distribution ought to be made and requests the circuit court that in case- he is not right to advise him how the proceeds ought to be distributed. The first question that meets us at the threshold of this case relates to the jurisdiction of the circuit court. We have been referred to numerous authorities to sustain the jurisdiction in this case. It will be perceived by a reference to most of the cases relied upon that the writ itself commanded the officei to bring the money into court, and that after the money was deposited in court, the contested claims were heard and determined upon a rule to show cause. The application was not made by the officer himself, but where he failed or refused to deposite the money in court, he was ruled to do so, and then a rule was made upon the claimants to show cause. In the case of Wortman vs. Conyngham, 1 Peter's Reports, p. 243, it was held that if the Marshal had any doubt as to the right of the plaintiff to receive the money, he might pay it into court, and discharge himself from all responsibility; or if a third person claims a right to the money he may obtain a rule upon the Marshal to show cause why the money should not be paid into court, and when this is ordered such person may assert his superior right to the money or any part of it, over that of the plaintiff under whose execution the money was levied: and the court will, in its discretion, hear and determine these contested claims upon a rule to show cause. It was there said that that court or the court of the State has in ho instance interposed in a Summary way to distribute the money or to decide the rights of the claimants to it, or in any incidental question in relation to the' tooney, unless it has first been brought into court, and great incori-veniency, perhaps injustice might arise if such a practice were to bé introduced:. There is no law in force in this State which require'» the sheriff to bring the money into court, consequently he could riot be ruled to' do so,- nor would a voluntary payment into court discharge him from responsibility. He is required to have the money before the court not for the purpose of distribution,- but to be paid to the plaintiff in the execution. Th'e court is the place designated by the law where he shall have the money; and there it is that the party entitled is expected to meet him to receive it.But it is contended that the record in this case shows that the money is deposited in court and that therefore it should make distribution. Whether the money be actually or constructively in court, we consider wholly immaterial, as the court under o'ur laws cannot under any state of case, take cognizance of the case in the' shape in which it is presented. The 64th Sec. of Chap. 60 o'f the' Revised Statutes enacts that “ If any officer shall sell any property under any execution- whether he receive payment therefor or no't; or shall make the money in any execution specified or therein endorsed and directed to be levied or any part thereof; and shall nof have the amount of such sale or the money so made -before the cour t; and pay over the same according to law, he shall be liable to phy the whole amount of such sale or money by him made to the person entitled thereto with lawful interest thereon, and damages in addition at the rate of ten per centum per month,- to be computed from the time when the execution is made returnable until the whole be paid, to be recovered in an action against such officer and his securities on his official bond, or the party aggrieved may proceed against such officer by motion before the court in which such writ is returnable in a summary manner, two days previous notice of such intended motion being given, on which motion the court shall render judgment for the amount which ought to have been paid with interest and damages aforesaid, arid award execution-thereon. It has been urged that unless the court shall take cognizance of this matter and make distribution for the sheriff, that the office will become exceedingly hazardous and that there will be no possibility of a sheriff’s escaping liability. We think otherwise. The duties of a sheriff under our statute are plain before him and it is almost impossible for him to err., No execution shall be a lien-on the property in any slaves, goods or chattels, or the rights or shares in any stock, or on any real estate to which the lien of the judgment, order or decree does not extend or has been determined, but from the time such writ shall be delivered to the officer in the proper county to be executed. Every sheriff or other officer to whom any execution may be delivered shall endorse thereon the hour, day of the month and year when it came to his hands, and if two or more writs of execution come to the hands of the sheriff or other officer the same day, that which he first received shall have'^priority over the other and be executed accordingly. The statute, it is true, does not provide for two executions coming to his hands at the same time, yet we apprehend there could be no difficulty in the case, as he most unquestionably would be required to pay over to the respective claimants in proportion to the amounts of their respective executions. He could have no difficulty therefore in determining upon the priority of lien upon personal property. We conceive it equally difficult for him to incur liability in the sale of i’eal estate as the lien is necessarily a matter of record and he is not bound to look beyond the face of the execution. The sheriff in the sale of real estate only passes such title as is in the execution creditor,, and if there be any prior liens, this being a matter of public record, it is the duty of the purchaser to examine for himself as he can only take title subject to all prior liens. We think it clear therefore that our law never contemplated a proceeding like the present, and that therefore it ought to be dismissed for want of jurisdiction. Dismissed. Oldham, J., said that he did not agree with the court upon the question of jurisdiction; but no dissenting opinion has been filed.